CHERI L. McCRACKEN, Esq. SBN# 006111
111 E. Dunlap Ave., Suite 1-484
Phoenix, AZ  85020
602-231-0595
602-231-0841 fax
cherimccracken@gmail.com
Attorney for Plaintiff

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Heidi S. Hall, | **CV No.**: |
| Plaintiff, | **COMPLAINT** |
| v. | **(Jury Trial Requested)** |
| Doug Burgum, Secretary, Department of the Interior (National Park Service), Agency, | |
| Defendant. | |

COMES NOW the undersigned, for Plaintiff Heidi S. Hall, and for her Complaint alleges as follows:

### THE PARTIES, JURISDICTION AND VENUE

1.    Plaintiff Heidi S. Hall, white female, age 59, is a resident of the State of Arizona, in the County of Coconino was at all times complained of herein. Ms. Hall mandatorily retired at age 57 from NPS (reference NPS 21-0065; NPS 21-0397).

2.      Defendant Doug Bergum, Secretary Department of the Interior of the United States is named in this action pursuant to pursuant to 42 U.S.C. §2000e-16(c).

3.      This Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. §1331, §1343, 28 U.S.C. §1367 and Title VII. The Civil Cover Sheet is attached hereto as Exhibit 1 and filed herewith.

4.      Plaintiff filed a formal Complaint with the Agency's EEOC Office on February 12, 2022. Plaintiff then appealed the Agency's September 19, 2024 final Order. The DOI, Agency No. DOI-NPS-21-0065 Appeal No. 2025000337, entered a final Agency Decision on November 18, 2025. The Complaint was based on Title VII, 42 U.S.C. §2000e and the Age Discrimination Employment Act.

5.      Plaintiff has exhausted her administrative prerequisites prior to filing this Complaint.

**ADMINISTRATIVE HISTORY**

6.      Plaintiff hereby realleges each and every allegation set forth in Paragraphs 1 through 5 as if fully set forth herein, and further incorporates by reference each and every allegation set forth below in all other paragraphs of this Complaint.

7.      Plaintiff has been discriminated against on the basis of gender, age and retaliated against for protected activity. The Accepted Complaint NPS 21-0065 by the agency was as following:

2

A.    On or about November 12, 2020, Complainant learned she was not selected for an interview for the position of Assistant Special Agent in Charge, job number IMP-10887144-20-NM.

B.    On December 3, 2020, Complainant learned she was not selected for the Assistant Special Agent in Charge (ASAC) position under vacancy number IMP-10887144-20-NM.

8.    The Agency Accepted Complaint in NPS 21-00397 was:

Whether Complainant has been subjected to disparate treatment on the bases of sex (female), age (YOB: June 1966) and reprisal (prior EEO activity) when on December 3, 2020, Complainant learned she was not selected for the Assistant Special Agent in Charge (ASAC) position, under vacancy number IMP-10887144-20-NM.

9.    Complainant asked for a hearing.

10.    Defendant produced a redacted ROI.

**GENDER**

11.    Plaintiff hereby realleges each and every allegation set forth in Paragraphs 1 through 10 as if fully set forth herein, and further incorporates by reference each and every allegation set forth below in all other paragraphs of this first amended complaint.

12.    At the conclusion of each investigation, the Agency provided Complainant with a copy of the Report of Investigation and notice of her right to request a hearing before an EEOC Administrative Judge (AJ). Complainant requested a hearings.

13.    On NPS 0065 and 0397 the AJ decided Summary Judgment in favor of Agency.

3

14.    The Agency subsequently issued a final Order adopting the AJ's decisions. Complainant filed her OFO  Appeal. OFO decided in Agency's favor November 18, 2025.

15.    Complainant previously filed two Equal Employment Opportunity (EEO) Complaints which are the subject of the First Amended Complaint, in CV-24-08101-PCT-SHD, alleging that the Agency discriminated against her on the basis of sex (female), age (52), and in reprisal retaliation for prior protected activity.

16.    The claims accepted by the Agency in that matter related to the following:

A.    Approximately August 23, 2018, Complainant was notified she was not selected for the position of Southwest Field Office Assistant Special Agent in Charge (ASAC);

B.    On or about August 23, 2018, Complainant was notified she was not selected for the position of Special Operations Group ASAC; and

C.    On or about April 22, 2020, Complainant was not selected for a 120-day Detail assignment into the position of ASAC. *See*, Exh. 1, Formal Complaint.[1] Ms. Hall filed several other EEO Complaints. Four of her Complaints were for non-selection because she was an older female.

17.    The Commission affirmed the Agency's final Order implementing the AJ's decision.

18.    Complainant filed a Request for Reconsideration with OFO.

---

[1] Ms. Hall objected to the fragmentation and requested that the Agency's illegal actions of her claims of discrimination against her, others and a hostile work environment be addressed.

4

19.     The Federal Sector and the Agency have obligations that personnel decisions shall be made free from any discrimination based on age, sex, or gender, and further to eradicate such discrimination.

## BACKGROUND

20.     Plaintiff hereby realleges each and every allegation set forth in Paragraphs 1 through 19 as if fully set forth herein, and further incorporates by reference each and every allegation set forth below in all other paragraphs of this first amended complaint.

21.     The Agency failed in its duty to comply with MD-110 and the Federal regulations. 29 §CFR 1614 *et seq*.

22.     EEO Management Directive (MD 110) and 29 C.F.R. §1614. EEO MD-110, chapter 1, H, 1-2:

> Federal Agencies are required by statute not to engage in discrimination **on the basis of** race, color, sex, national origin age, disability, genetic information or retaliation. (Emphasis added).

> …The authority… stems from the statutory obligation that states that federal agencies have the primary responsibility to ensure nondiscrimination in employment. 42 U.S.C. 2000c-16.

23.     "Personnel actions", under the Civil Service Reform Act of 1978, includes most employment related decisions such as appointment, promotion, work assignment, compensation, and performance reviews.

24.     The above are consistent sections with the terms and general usage and referring to 5 U.S.C. 2302 (a)(2)(A).

25.    "Free from" discrimination means "untainted" or "clear of something that is regarded as objectionable."

26.    The allegations in the Complaint are taken as true and the pleadings are construed in the light most favorable to the nonmovant. Outdoor Media Group, Inc. v. City of Beaumont, 506 F.3d 895, 900 (9th Cir. 2007).

A.    **Discrimination Hall.**

27.    Hall went into NPS law enforcement in 2002. She had five years more experience than the male comparator, Fisher, who got the previous promotion. Neither Fisher nor Hall held positions where they could make policy, however Fisher was given credit for doing so by evaluators. Hall was not.

28.    Hall had more law enforcement and investigation experience than all of the interviewees for IMP-10887144-20-NM including Aaron Smith. There has been an ongoing hostile environment, and historical pattern and practice of different treatment of Hall and older women in general by NPS; particularly by IDS based on their sex and age. The facts showing discrimination against Hall detailed in Exh. 2 Affidavit of Heidi S. Hall dated 1/8/2021, which is incorporated herein by reference and include the historical pattern and practice of treatment of discrimination based on sex, age and the retaliation.

29.    Ms. Hall has repeatedly put forth patterns and practices of discrimination.

30.    The Agency's misreadings of Ms. Hall's background, resume, and qualifications to discriminate against her were either discriminatory, intentional or

done with reckless disregard of the truth of the matter. The Agency incorrectly claims Hall had less law enforcement and management than her male peers, including but not limited to the selected individual Aaron Smith. That was untrue. The Agency claimed she had less law enforcement experience and no management experience, yet Hall ran several airlines at Grand Canyons Airport. Ms. Hall had years of experience in law enforcement prior to IDS for NPS. *See*, ROI DPO-NPS-21-0065.

31.    A Federal agency cannot dismiss a claim if:

> The complainant contends that the claim is a part of a pattern of discrimination or establishes that there are other equitable circumstances that mitigate untimely contact. Time limits are subject to waiver, estoppel, and equitable tolling under 29 C.F.R § 1614.604(c).

32.    A comparison of Aaron Smith's qualifications to Hall's shows Hall's Application reflects she is much better than qualified than Aaron Smith.

33.    The NPS failed to comply with MD-110 that states that:

> In accordance with 29 C.F.R § 1614.108(f) and guidance set forth in Section II(A)(1) of this Chapter, if the EEO Director or designee concludes that the new incidents(s) raises a new claim, but that this new claim is like or related to the claim(s) raised in the pending complaint, the agency must amend the pending complaint to include the new claim.

34.    Ms. Hall was held to a higher standard than the precedent. It is clear under Supreme Court precent and the 11th Circuit. McDonnell Douglas is a standard that is far too stringent for a Federal employee, and has been questions in the private sector.

7

35.     Protected activity should be interpreted broadly. Protected is anyone who opposed any practice, made an illegal employment practice or because he has made a charge, testified, assisted, or hesitated in any manner and invest proceeding, or hearing.

36.     McDonnell Douglas is not the standard that should apply to Federal employment. First, it is mandated to should be a system untainted by discrimination. It is an obligation and a duty to maintain a workplace free of discrimination.

**B.      Retaliation.**

37.     Hall was retaliated against. Here, retaliation was a motivating factor based on A-H below:

A.      There was suspicious timing; Hall was not told she was not going to be reporting to Betsy Smith until Ms. Smith took the position and was not allowed to work with Betsy Smith;

B.      Verbal or written statements, i.e., she was not competition; may not be respected; attempted to remove her from the shooting incident team;

C.      Comparative evidence that a similarly situated employee was treated differently Fisher, Dempsey, Kuvlesky, Lake and C. Smith, all male, were treated differently;

D.      Falsity of the employer's reason for the adverse action; falsehood that she had incomplete work; and

8

E.    Other pieces of evidence which, when viewed together, may permit an inference of retaliatory intent; placed in vehicles for presidential inauguration with males who she had asked to have been corrected.

F.    Retaliation is defined that anything that would intimidate and prevent protected activity can be seen as a retaliation. NPS has five Administrative Complaints from Ms. Hall  with Reports of Investigation which provide detailed notice of Ms. Hall's Complaints. *See*, Exhibit 3 Compiled Timeline, attached hereto.

G.    The Agency misread and mis-characterized Hall's application and resume.

H.    She had performed extremely well at the Petrified Forest, but no one checked with her references and used a disgruntled person's information instead. The Agency did not do this with male applicants.

38.    Aaron Smith has less qualifications and time in law enforcement for the position than Hall. Betsy Smith and the other interviewees were much less qualified than the older women McGee and Hall.

39.    Ms. Hall repeatedly called out the Agency's hiring practices as favoring younger white males, and specifically told her management that repeatedly.

40.    She also supported others who had EEO complaints or were harassed, including victims, fellow officers, and other Complainants, including women at Grand Canyon, Glen Canyon and Yosemite.

9

41.    Illegal bias "was a motivating factor for" an adverse employment action. This included women at Yosemite who were harassed and demeaned daily, subjected to temper tantrums, subjected to explicit gross sexual stories and shunning. This was especially egregious as women lived next door to perpetrators. *See* Hall's Affidavit Exhibit 2.

42.    Every time Hall applied for a promotion the goal posts moved, i.e., being dinged for not bringing up information when she was told to keep her answers short in the interview.

43.    Then, allegedly, she didn't have undercover work experience. The position that was advertised didn't call for it. MD-110 provides that a discrimination complainant such as Ms. Hall has the "right" to virtually all information and documents.

44.    The Agency based many of its facts and allegations in the administrative matter on documents it had not provided to Ms. Hall.

45.    The Agency's retaliatory non-action in not correcting or interfering with a sexually hostile environment, allowed an ongoing hostile work environment which Hall and her female colleagues endured. Ms. Hall reported specifically on the sex discrimination and hostile environment ongoing at Yosemite.

46.    The qualifying opportunities have not been given to Ms. Hall. They were given to younger males who upon information and belief were given the interview questions.

47.    She was not given a detail to an Assistant Special Agent in Charge Position directly before the selection of the ASAC position as was a male and subsequent applicant, and male colleague. This was against all personnel regulations.

48.    Hall's qualifications have been ignored. She has extensive prior management and law enforcement experience. Hall's previous law enforcement experience and management experience was not considered in reviewing her qualifications.

49.    Hall's named references from the Petrified Forest thought very highly of her and would have told the Agency, if asked, her excellent qualifications, performance and leadership skills. They were never contacted.

50.    The interview questions and qualifications were changed for each of the four promotions which were all for the same position description; a Matrix not based on the position was created for the positions for which Hall applied. The Matrix only allowed numbers 1-5 as ratings skewing the data.

51.    Hall suffered ongoing emotional distress, anxiety and depression caused by the Agency's actions, loss of pay and benefits.

52.    Hall and McGee were highly qualified older women, both more qualified than those selected for interviews and for the promotion.

/ / / /

/ / / /

/ / / /

**PROBATIVE HISTORY OF
SEX/AGE DISCRIMINATION/RETALIATION**

53.    Plaintiff hereby realleges each and every allegation set forth in Paragraphs 1 through 52, as if fully set forth herein, and further incorporates by reference each and every allegation set forth below in all other paragraphs of this Complaint.

54.    The NPS-ISB has a long history of not promoting female and older applicants, a pattern of preselection of white younger males. (A prohibited personnel practice).

55.    Beginning in 2012, a younger white male, Christoper Smith, was promoted over an older female, Jennifer Sypher.

56.    In 2013 Christopher Smith, male, was promoted to an ASAC position by the Special Agent in Charge.

57.    In 2014 a vacancy was posted for an ASAC position for the Southwest Field Office, Hall applied. A decision to duty station the position in Flagstaff prevented another older woman from applying.

58.    In August 2014, a younger white male, Steven Demske, was promoted over Hall for the SWFO ASAC position. The Manager advised Hall that this was Demske's first supervisory job. Ms. Hall had extensive management experience. The selectee's performance was not satisfactory.

59.    The selection was neither done through a proper panel, nor procedure. One panel member stated that Hall was rated higher than the successful male.

60.    In December 2016, a younger while male, Christopher Kuvlesky, was promoted over Hall. Demske was laterally transferred into a newly created ASAC position in late December 2016 to January 2017. No one was given the opportunity to apply for it. It should have been advertised as part of the regular business practice and regulations.

61.    Females have ongoing complaints on the basis of non-selection, retaliation, and a sexually hostile environment at Glen Canyon, the Grand Canyon and Yosemite. Many females have left NPS because of the hostile work environment.

62.    ISB is a small group of people of the Agency/NPS, somewhere between 26 and 40 people. It is a nationwide organization. Duty stations seem to be adjusted for preferred personnel (males), but are not advertised as fluid to job applicants.

63.    Hall applied to the NPS GOAL academy in September and was not selected, upon information and belief because she was female.

64.    Hall applied for a 2016 vacancy in the Atlantic field office; the Agency questions changed. Hall had to lobby and complain in order to get herself on the certification list in November 2016. She was qualified.

13

65.     In approximately 2018, a vacancy announcement was posted to fill two ASAC positions. The related applicant questionnaire had been changed again for a position for which Hall applied.

66.     In August 2018, the hiring process was not correctly followed. The selectee was allowed to continue to be the Acting Chief Ranger at Saguaro National Park after his 120-day detail was completed which was forbidden by regulation. (5 CFR §335.102). Another male was also given a detail to improve his qualifications. Hall was given neither, nor its equivalent.

67.     Hall was not selected for a team which would have helped her gain more experience to be more competitive for promotions. Ms. Hall never received a promotion, nor was she fairly considered. She was far better qualified than the male applicants.

68.     All allegations and facts are admissible as evidence even if not a claim including dating back to Hall's first application for promotion. Management Directive 110:

> An Agency can be barred from dismissing a complaint on timeliness grounds when 1b(2) the Complainant contends that the claim is a part of a pattern of discrimination or establishes that there are other equitable circumstances that mitigate untimely contact time limits, subject to waiver, estoppel, and equitable tolling under 29 C.F.R. §16 14.604(c). This shows an ongoing pattern and practice of blatant discrimination, hostile working environment and retaliation which makes the claims herein more probably than not and must come in as evidence.

69.     Ms. Hall and others knew that to file an EEO complaint basically would mean the end of their careers. It is general knowledge in the Park Service that filing

14

an EEO complaint ends your career. Upon information and belief the careers of several women and one man who have all been negatively affected by participating in the EEO process

70.    A Complainant alleging a hostile work environment will not be time barred if all acts are part of the same unlawful practice and at least one of the acts falls within the filing period. There are many such acts here.

71.    Here, Ms. Hall gave her employer the benefit of the doubt, continued to present herself for promotion, and asked for guidance and qualifying opportunities while the discriminating acts continued.

72.    Unlawful discrimination occurs when: (1) "a discriminatory compensation decision or other practice is adopted". *Lilly Ledbetter Act*.

73.    The "other practice" here includes failing to promote Ms. Hall, giving other, males, not in her protected class the qualifying opportunities and creating criteria for the positions to favor individuals who were male and younger. Allowing the blatant harassment, sexualized atmosphere and retaliation.

74.    Discriminatory acts include inferior treatment of unattractive sexual assault victims, mishandling of evidence in those matters; disgusting stories about males' sexual exploits; dismissal of the credibility of women; micromanagement of Hall's duties and time demands and false information about her work (she had excellent evaluations); labeling Hall a complainer; disciplining Hall for bringing a colleague's sexual assault to her supervisor's attention, stating the OIG had problems with her.

15

**HOSTILE WORK ENVIRONMENT**

75. Plaintiff hereby realleges each and every allegation set forth in Paragraphs 1 through 74 as if fully set forth herein, and further incorporates by reference each and every allegation set forth in all other paragraphs of this complaint. *See* ¶68.

76. Hall was exposed to a hostile working environment as detailed above and in her Affidavit (Exh. 2) , this include demeaning remarks about her, her female colleagues, and the sexual assault victims she worked with. She was known as a "filer" because she had filed her first complaint.

**ADEA**

77. Plaintiff hereby realleges each and every allegation set forth in Paragraphs 1 through 76 as if fully set forth herein, and further incorporates by reference each and every allegation set forth in all other paragraphs of this complaint.

78. Ms. Hall is and was over the age of 40 at all times relevant hereto.

79. She was discriminated against because of her age in favor of younger white males.

**GENDER DISCRIMINATION**

80. Plaintiff hereby realleges each and every allegation set forth in Paragraphs 1 through 79 as if fully set forth herein, and further incorporates by reference each and every allegation set forth in all other paragraphs of this complaint.

16

81.    Actions of Agency as recited herein constitutes illegal conduct barred on gender under Title VII.

## DEMAND FOR JURY TRIAL

82.    Ms. Hall hereby demands a trial by jury.

## REQUEST TO HAVE JOINED WITH PREVIOUS MATTER

83.    Plaintiff respectfully requests that this matter be joined to the ongoing matter Hall v. Burgum, District Court of Arizona CV-2024-08101-PCT-SHD, as they share the same parties, same issues, witnesses and much of the probative evidence.

## RELIEF REQUESTED

Based upon the foregoing, Plaintiff seeks judgment against Defendant DOI, for the following relief:

a.    Back pay, front pay including the value of benefits, and reinstatement with back pay and benefits,

b.    Compensatory damages,

c.    Emotional distress damages,

d.     Pre and post judgment interest,

e.     Costs and attorney fees,

f.    Such other relief both monetary and injunctive that the Court may find appropriate,

g.    Injunctive relief to direct DOI to comply with the laws and its own procedures with monitoring gender and age discrimination, and promoting personnel.

RESPECTFULLY SUBMITTED this 16th day of February 2026.

Cheri L. McCracken, Esq.

_____
Cheri L. McCracken
Attorney for Plaintiff

18